[Cite as *State v. Campbell*, 2026-Ohio-335.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO<br><br>Plaintiff – Appellee<br><br>-vs-<br><br>RANDON RAYMONE CAMPBELL<br><br>Defendant – Appellant | Case Nos. 2025CA00072<br><br><u>Opinion And Judgment Entry</u><br><br>Appeal from the Massillon Municipal Court, Case Nos. 2024-CRB-1462 & 2024 TRD 6362<br><br>Judgment: Affirmed<br><br>Date of Judgment Entry: February 3, 2026 |

**BEFORE:** CRAIG R. BALDWIN, P.J., KEVIN W. POPHAM, J. DAVID M. GORMLEY; Appellate Judges

**APPEARANCES:** CHRISTOPHER PACE, for Plaintiff-Appellee; JAMES L. HARDIMAN for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}  Defendant-Appellant Randon Raymone Campbell ("Campbell") appeals his convictions and sentences after a jury trial in the Massillon Municipal Court. For the reasons below, we affirm.

**Facts and Procedural History**

**Charges and Pretrial Proceedings**

{¶2}  Following a traffic stop on June 28, 2024, Campbell was charged with three offenses: obstructing official business, a second-degree misdemeanor in violation of R.C. 2921.31(A); resisting arrest, a second-degree misdemeanor in violation of R.C.

2921.33(A); and display of plates properly secured and unobstructed, a minor misdemeanor in violation of R.C. 4503.21(A)(2).

{¶3} On September 18, 2024, Campbell filed a motion to suppress. He supplemented that motion on October 24, 2024. Campbell argued that the officer lacked reasonable, articulable suspicion to initiate the traffic stop based on an allegedly obstructed license plate and lacked probable cause to arrest him for obstructing official business and resisting arrest.

{¶4} On October 30, 2024, the trial court conducted an evidentiary hearing on the motion. The following day - October 31, 2024 - the court issued a written judgment entry overruling the motion to suppress. After hearing testimony from Officer Kyle Myers, reviewing dash camera footage from the patrol vehicle, and considering photographs admitted into evidence, the court found the officer's testimony competent and credible. Specifically, the court determined that a dark plastic cover over Campbell's rear license plate obstructed its visibility at night and could not be reasonably viewed by the officer or other motorists using the roadway. The court further concluded that the officer had reasonable, articulable suspicion to stop Campbell's vehicle and request his driver's license. *State v. Dunlap*, 2024-Ohio-4821.

{¶5} The case proceeded to a jury trial beginning on May 29, 2025[1]. The evidence presented at trial is summarized below.

**Trial Evidence**

**Testimony of Officer Kyle Myers**

---

[1] The minor misdemeanor count in Case Number 2024TRD 06362, 5th Dist. No. 2025CA00072, was tried to the court.

{¶6} Officer Kyle Myers of the Jackson Township Police Department testified that on Friday, June 28, 2024, at approximately 12:13 a.m., he was on routine patrol when he observed a Ford Explorer exit what he described as a "well-known drug area." *Trial Transcript (T.) at* 43. He noticed that the vehicle had a dark license plate cover. Based on that observation, Officer Myers activated his cruiser's overhead lights to initiate a traffic stop for an obstructed license plate. *T. at 43-44, 63.*

{¶7} Officer Myers testified that after activating his lights, he could clearly see the license plate number and radioed it to dispatch to check for outstanding warrants. *T. at 44, 62-63.* The dash camera video from the cruiser was played for the jury and admitted into evidence. *T. at 54; State's Exhibit A.*

{¶8} Upon approaching the vehicle, Officer Myers informed Campbell of the reason for the stop. *T. at 44.* According to Officer Myers, Campbell responded that his license plate was legal. Campbell lowered his window slightly and extended his driver's license but refused to release it. Officer Myers testified that he then pulled the license from Campbell's hand. *T. at 44, 68-69.*

{¶9} While waiting for the records check results from dispatch, Officer Myers asked Campbell whether there were any weapons in the vehicle. *T. at 44-46, 72.* Campbell replied that he did not have to answer the question. *T. at 46, 98.*

{¶10} Officer Myers testified that dispatch advised him that Campbell had prior cautions involving firearms in vehicles and drug-related charges. *T. at 46, 121-123; State's Exhibits. D, E.* Based on those cautions, Officer Myers asked Campbell to step out of the vehicle for officer safety. *T. at 47-48, 99.* Officer Myers stated that he made this request at least ten times. *T. at 118-119.* He further testified that he warned Campbell

multiple times that failure to comply would result in a charge of obstructing official business. *T. at 120*. Officer Myers also warned Campbell that officers would break the vehicle window and forcibly remove him if he continued to refuse. *T. at 48, 69.*

{¶11} Officer Myers testified that he drew his service weapon after observing Campbell reach behind the vehicle's center console area. *T. at 82, 87, 109-110, 120*. Myers then instructed his partner to break the vehicle's window. *T. at 49-50*. Campbell argued that he was only reaching to undo his seat belt.

{¶12} Campbell was forcibly removed from the vehicle. Officer Myers described Campbell's resistance as passive. *T. at 50*. Three officers ultimately restrained Campbell and placed him in handcuffs. Officer Myers' body camera footage was played for the jury and admitted into evidence. *T. at 55; State's Exhibit B.*

**Testimony of Officer Andrew Smith**

{¶13} Officer Andrew Smith, also of the Jackson Township Police Department, testified that he responded to Officer Myers' call for assistance during the traffic stop. *T. at 134.* Upon arriving at the scene, Officer Smith heard Officers Myers and Young repeatedly instruct Campbell to exit the vehicle. *T. at 134-135.*

{¶14} Officer Smith testified that he observed Campbell reach toward the area behind the center console. At that point, he saw Officer Myers draw his duty weapon. *T. at 134-135, 141*. Officer Myers directed Smith to break the vehicle window, which Smith did. *T. at 135, 138-139*. Officer Smith's body camera video was played for the jury and admitted into evidence. *T. at 139-140; State's Exhibit C*.

**Defense Evidence**

{¶15} The defense presented no witnesses. Defendant's Exhibit 1, a screenshot depicting the license plate with its cover, was admitted into evidence. *T. at 154, 198*. Campbell moved for a jury view of the actual license plate, but the trial court denied the request. *T. at 194-196*.

**Verdict**

{¶16} The jury found Campbell guilty of obstructing official business and not guilty of resisting arrest. The trial court separately found Campbell guilty of failing to display plates properly secured and unobstructed, a minor misdemeanor in violation of R.C. 4503.21(A)(2).

**Assignments of Error**

{¶17} Campbell raises five assignments of error for our consideration,

{¶18} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN RENDERING A VERDICT OF GUILTY ON THE CHARGE OF OBSTRUCTED LICENSE PLATE IN THAT THE STATE FAILED TO PROVIDE SUFFICIENT EVIDENCE TO PROVE APPELLANT'S GUILT, BEYOND A REASONABLE DOUBT."

{¶19} "II. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILTY ON THE CHARGE OF OBSTRUCTED LICENSE PLATE."

{¶20} "III. THE FINDING OF GUILTY ON THE CHARGE OF HAVING AN OBSTRUCTED LICENSE PLATE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶21} "IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILNG TO PROPERLY INSTRUCT THE JURY AS TO ALL OF THE ELEMENTS OF

THE OFFENSE OF OBSTRUCTNG OFFICIAL BUSINESS PURSUANT TO REVISED CODE 2921.31 (A) A MISDEMEANOR OF THE SECOND DEGREE."

{¶22} "V. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN IMPOSING A SENTENCE OF INCARCERATION FOR THE MISDEMEANOR OFFENSE OF OBSTRUCTION OF OFFICIAL BUSINESS, A MISDEMEANOR OF THE SECOND DEGREE."

I.

{¶23} In his first assignment of error, Campbell argues that the trial court abused its discretion by denying his request for a view of the actual license plate and prohibiting the jury from viewing the license plate. According to Campbell, a physical inspection of the plate was necessary—and constituted the "best evidence"—to determine whether the license-plate cover obstructed its visibility. The record does not support this claim.

**Standard of Review**

{¶24} The decision to permit a jury view lies within the trial court's sound discretion. *Calloway v. Maxwell*, 2 Ohio St.2d 128 (1965); *State v. Bryan*, 1987 Ohio App. LEXIS 7823, *3 (5th Dist. July 8, 1987). That decision will not be reversed absent an abuse of discretion. *State v. Zuern*, 32 Ohio St.3d 56, 58 (1987); *State v. Hanna*, 2002-Ohio-2221, ¶ 34; *see also* R.C. 2945.16.

{¶25} An abuse of discretion occurs only when the trial court's decision is unreasonable, arbitrary, or unconscionable. *Tennant v. Gallick*, 2014-Ohio-477, ¶ 35 (9th Dist.); *State v. Firouzmandi*, 2006-Ohio-5823, ¶ 54 (5th Dist.). A reviewing court may not substitute its judgment for that of the trial court.

**Analysis**

{¶26}  Measured against this standard, Campbell's argument fails. The trial court reviewed dash-camera video depicting the traffic stop as it occurred and considered additional photographic evidence introduced by both parties. Based on that evidence, the court expressly found that the license plate was obstructed:

> "It was definitely obstructed … it was dark, covered. You could not see the plate on the roadway. You could see it when it was lit up…." *T. at 196.*

{¶27}  Despite this record, Campbell asserts—without meaningful elaboration—that the State's videos and photographs were inadequate. He does not, however, explain how a post hoc view of the license plate could have recreated the lighting conditions, viewing angles, distance, and motion present when Officer Myers observed the plate from his cruiser. A jury view conducted later, under materially different circumstances, would not necessarily have produced a more reliable outcome. To be sure, evidence contemporaneous with the stop does not play second fiddle to post hoc review.

{¶28}  Importantly, the trial court was not required to conduct a jury view of the license plate simply because the defense requested one. Rather, the court was entitled to assess whether such a view would meaningfully aid its fact-finding. Given the availability of dash-camera footage, body-camera evidence, and a defense photograph of the plate, the trial court concluded that viewing the actual license plate was unnecessary.

**{¶29}** Nothing in the record suggests that the trial court's decision was arbitrary, unreasonable, or unconscionable. To the contrary, the court's ruling reflects a reasoned exercise of discretion based on the evidence presented.

**Best Evidence Rule**

**{¶30}** Campbell also contends that the trial court's refusal to conduct a view violated Ohio's best evidence rule. This argument is misplaced.

**{¶31}** Evid.R. 1002 – colloquially known as the Best Evidence Rule - applies only to proof of the content of a writing, recording, or photograph. It does not apply to testimony concerning the condition or appearance of a physical object. *State v. Maupin*, 42 Ohio St.2d 473 (1975), syllabus ¶ 1; *Youngstown v. L. Hasley*, 1982 Ohio App. LEXIS 11460, *5 (7th Dist. Sept. 8, 1982).

**{¶32}** Officer Myers testified to what he personally observed—that a dark cover obstructed the plate's visibility until illuminated by his cruiser's lights. This testimony did not seek to prove the content of the license plate and, therefore, does not implicate Evid.R. 1002. *State v. Ruggly*, 2022-Ohio-3730, ¶ 23 (5th Dist.).

**Conclusion**

**{¶33}** The trial court acted within its discretion in denying Campbell's request for a jury view of the license plate. Campbell's first assignment of error is overruled.

II.

**{¶34}** Campbell next argues that his conviction for having an obstructed license plate is not supported by sufficient evidence.

**Standard of Review**

{¶35} Sufficiency of the evidence presents a question of law reviewed de novo. *State v. Walker*, 2016-Ohio-8295, ¶ 30; *State v. Jordan*, 2023-Ohio-3800, ¶ 13. The reviewing court considers whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997); *State v. Murphy*, 91 Ohio St.3d 516, 543 (2001).

**Governing Law**

{¶36} R.C. 4503.21(A)(2) requires that a license plate be securely fastened and "not be covered by any material that obstructs its visibility." Violations of this statute are strict-liability offenses. R.C. 4503.21(C).

**Analysis**

{¶37} The evidence presented at trial was sufficient to establish each element of the offense.

{¶38} Officer Myers testified that he observed a dark license-plate cover on the Ford Explorer driven by Campbell and initiated a traffic stop based on that observation. *T. at 43-44, 63.* Officer Myers activated his lights. *T. at 63.* Regarding when he was able to read the Explorer's license plate, Officer Myers explained "Once I lit him up, yes. Once all my flashing lights and the bright lights to make sure people see the cruiser, I was able to see the plate." *T. at 67.*

**{¶39}** The dash-camera video of the stop was admitted into evidence and played for the jury. T. at 54; State's Exhibit A. The defense also introduced a photograph of the license plate, admitted as Defendant's Exhibit 1. *T. at 154, 198.* Our review of this evidence confirms that the license plate cover caused plate information to be obstructed from visibility.

**{¶40}** Viewed in the light most favorable to the State, this evidence permits a rational trier of fact to conclude that the license plate was covered by material that obstructed its visibility under ordinary driving conditions. Because the offense is one of strict liability, no additional proof was required.

**Conclusion**

**{¶41}** The State presented legally sufficient evidence to support Campbell's conviction under R.C. 4503.21(A)(2).

**{¶42}** Campbell's second assignment of error is overruled.

III.

**{¶43}** In his third assignment of error, Campbell contends that his conviction on the charge of having an obstructed license plate is against the manifest weight of the evidence. We disagree.

**Standard of Review**

**{¶44}** A manifest-weight challenge concerns the persuasive force of the evidence. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. A conviction may be reversed on this ground only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Martin*, 2022-Ohio-4175, ¶ 26.

**{¶45}** In reviewing a manifest-weight claim, the appellate court acts as a "thirteenth juror," reviewing the entire record, weighing the evidence and all reasonable inferences, and considering witness credibility. *State v. Jordan*, 2023-Ohio-3800, ¶ 17; *State v. Sheppard*, 2025-Ohio-2747, ¶ 24 (5th Dist.). Even so, substantial deference is afforded to the trier of fact's credibility determinations and resolution of evidentiary conflicts. *Eastley*, ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

**Analysis**

**{¶46}** Campbell reiterates his earlier argument that the trial court erred by denying his request for a jury view, asserting again that such a view constituted the best evidence. (Appellant's Brief at 11-13.) As previously explained, that premise is incorrect and does not establish that the verdict is against the manifest weight of the evidence.

**{¶47}** The trial judge, acting as the trier of fact, heard Officer Myers' testimony, observed his demeanor, and considered corroborating dash-camera and body-camera footage. The judge credited that evidence in resolving any claimed inconsistency regarding the visibility of the license plate.

**{¶48}** When two reasonable interpretations of the evidence exist, neither of which is implausible, an appellate court will not substitute its judgment for that of the factfinder. *State v. Dyke*, 2002-Ohio-1152, ¶ 13 (7th Dist.); *State v. Snider*, 2012-Ohio-2183, ¶ 24 (5th Dist.).

**{¶49}** Viewed as a whole, the evidence supports a logical and credible basis for the verdict. There is no indication that the trier of fact lost its way or created a manifest miscarriage of justice.

**Conclusion**

{¶50} After independently reviewing the record and weighing the evidence, we conclude that Campbell's conviction under R.C. 4503.21(A)(2) for having an obstructed license plate is not against the manifest weight of the evidence.

{¶51} Campbell's third assignment of error is overruled.

IV.

{¶52} In his fourth assignment of error, Campbell argues that the trial court failed to properly instruct the jury on the elements of Obstructing Official Business. Specifically, he contends the jury was not adequately instructed that the offense requires proof that he acted *without privilege* and *with purpose* to prevent, obstruct, or delay officers in the performance of their lawful duties.

**Standard of Review**

{¶53} A trial court must fully and correctly instruct the jury on all matters of law necessary for the jury to perform its duty as the fact finder. *State v. Comen*, 50 Ohio St.3d 206, 208 (1990), paragraph two of the syllabus. "The failure to object to a jury instruction constitutes a waiver of any claim or error relative thereto, unless, but for the error, the outcome of the trial would have been otherwise." *State v. Underwood*, 3 Ohio St.3d 12 (1983), syllabus, citing *State v. Long,* 53 Ohio St.2d 91 (1978); *State v. Lang*, 2011-Ohio-4215, ¶ 145.[2]

---

[2] We recognize that "waiver" is the knowing, voluntary, and intentional relinquishment of a known right, issue, or claim, and that to "forfeit" is to lose a right by some [involuntary] error, fault, or neglect.  See, *Black's Law Dictionary* (6th Ed. 1990).

{¶54} Here, although Campbell did not submit proposed written jury instructions, he objected to the instruction on Obstructing Official Business. Accordingly, any instructional error is reviewed for harmless error under Crim.R. 52(A).

**Background**

{¶55} In his objection to the jury instruction on Obstructing Official Business, Campbell argued that conviction requires proof of an "overt act" and requested that the term be defined for the jury. *T. at 185-187.* He further objected generally to the definitional portions of the instruction. *T. at 223.* As Campbell preserved any error, we review the jury instructions for harmless error under Crim.R. 52(A), rather than under plain-error (Crim.R. 52(B)).

{¶56} The trial court instructed the jury as follows:

The Defendant, Randon Raymone Campbell, is charged with Obstructing Official Business. Before you can find the Defendant guilty, you must find, beyond a reasonable doubt, that on June 28th of 2024, in Jackson Township, Stark County, Ohio, the Defendant, without privilege to do so and with purpose to prevent and obstruct the performance by a Jackson Township police officer, refused to exit his vehicle after multiple verbal commands during a legal traffic stop, and had to be removed by force after his window was broken.

*T. at 8-9.*

**Governing Law**

{¶57} Ohio Jury Instructions for Obstructing Official Business recommend instructing the jury that the defendant, *without privilege* and *with purpose* to prevent,

obstruct, or delay a public official, committed an act that hampered or impeded the official in the performance of lawful duties. Ohio Jury Instructions, CR § 521.31 (Rev. Nov. 7, 2020) (emphasis added). The instruction further suggests defining the terms "privilege," "purposely," and "hamper or impede."

{¶58} The failure to properly instruct a jury does not ordinarily constitute structural error. *Neder v. United States*, 527 U.S. 1 (1999). Rather, such errors are subject to harmless-error analysis under *Chapman v. California*, 386 U.S. 18 (1967). *Id.*

{¶59} Crim.R. 52 affords appellate courts limited power to correct errors that occurred during the trial court proceeding. The rule distinguishes between errors to which a defendant objected at trial [Harmless Error - Crim.R. 52(a)] and errors that a defendant failed to raise at trial. [Plain Error - Crim.R. 52(b)]. The main distinction between plain-error review and harmless-error review is the party bearing the burden. *See State v. Jones*, 2020-Ohio-3051, ¶ 17-18.

{¶60} Under Crim.R. 52(A), preserved errors require reversal only if they affect substantial rights. The State bears the burden of demonstrating that the error did not affect the outcome of the trial. *State v. Jones*, 2020-Ohio-3051, ¶¶ 17-18; *State v. Bond*, 2022-Ohio-4150, ¶ 7. An error does not affect substantial rights of a defendant when the error is harmless beyond a reasonable doubt and did not contribute to the verdict in any meaningful way. *State v. Rahman*, 23 Ohio St.3d 146, 151 (1986).

**Analysis**

{¶61} Campbell's argument rests largely on the premise that the jury should have been permitted to decide whether the underlying traffic stop was lawful and whether he acted "purposely" in refusing to exit his vehicle. That premise is flawed.

{¶62}   Prior to trial, Campbell filed a motion to suppress challenging the legality of the traffic stop. The trial court denied the motion, finding that the dark plastic license-plate cover obstructed visibility at night and provided reasonable, articulable suspicion for the stop. Campbell did not assign error to that ruling on appeal. *See* App.R. 16(A)(3).

{¶63}   A suppression ruling, once made, is binding at trial. *State v. French*, 72 Ohio St.3d 446, 449 (1995); *State v. Edwards*, 2005-Ohio-6180, ¶ 12; *State v. Henry*, 2009-Ohio-434, ¶ 30 (12th Dist.). Accordingly, the legality of the stop was not a question for the jury, nor is it an issue before this Court.

{¶64}   Once a traffic stop is lawful, officers may order the driver to exit the vehicle without violating the Fourth Amendment. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); *State v. Evans*, 67 Ohio St.3d 405, 408 (1993); *State v. Jackson*, 2022-Ohio-4365, ¶ 13. No additional justification for the order is required. *Id.*

{¶65}   At trial, the jury heard testimony from Officer Myers and Officer Smith describing repeated commands for Campbell to exit the vehicle. The jury also viewed body-camera footage depicting Campbell's refusal in real time. This evidence supported the conclusion that Campbell acted with purpose and without privilege to impede the officers' lawful duties.

{¶66}   Even assuming, arguendo, that the trial court could have provided additional definitional instructions, the State met its burden to demonstrate that any such error did not affect Campbell's substantial rights. The evidence overwhelmingly established the elements of the offense, and there is no reasonable probability that a more detailed instruction would have altered the verdict.

**Conclusion**

{¶67} Based on the entire record, we conclude that any error in the jury instructions on Obstructing Official Business was harmless beyond a reasonable doubt and did not affect Campbell's substantial rights.

{¶68} Campbell's fourth assignment of error is overruled.

V.

{¶69} In his fifth assignment of error, Campbell argues that the trial court erred by imposing a jail sentence for his conviction for Obstructing Official Business. We disagree.

**Standard of Review**

{¶70} A trial court has broad discretion in misdemeanor sentencing, and an appellate court will not disturb a sentence that falls within the statutory range absent an abuse of that discretion. *State v. Thadur*, 2016-Ohio-417, ¶ 11 (5th Dist.), citing *State v. Smith*, 2006-Ohio-1558, ¶ 21 (9th Dist.); *State v. Morgan*, 2024-Ohio-4596, ¶ 20 (5th Dist.).

{¶71} An abuse of discretion connotes more than an error of judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably—such as by applying an incorrect legal standard, relying on facts not supported by the record, or imposing a sentence that results in a manifest injustice. See *Tennant v. Gallick*, 2014-Ohio-477, ¶ 35 (9th Dist.); *In re Guardianship of S.H.*, 2013-Ohio-4380, ¶ 9 (9th Dist.); *State v. Firouzmandi*, 2006-Ohio-5823, ¶ 54 (5th Dist.); *State v. Roman-Navarre*, 2025-Ohio-3156, ¶ 10 (5th Dist.); *State v. Gibson*, 2025-Ohio-5497, ¶ 49 (5th Dist.).

{¶72} In exercising its sentencing discretion, the trial court must be guided by the purposes of misdemeanor sentencing—to protect the public from future crime and to

punish the offender. R.C. 2929.21(A). The court must also consider the factors enumerated in R.C. 2929.22(B)(1) and may consider any additional relevant factors. R.C. 2929.22(B)(2). When the sentence imposed is within the statutory limits, a reviewing court presumes that the trial court considered these statutory directives unless the record affirmatively demonstrates otherwise. *State v. Inman*, 2021-Ohio-1573, ¶ 8 (4th Dist.), quoting *State v. Downie*, 2009-Ohio-4643, ¶ 48 (7th Dist.); *State v. Mosser*, 2025-Ohio-5536, ¶ 15 (5th Dist.).

**Analysis**

{¶73} Measured against these principles, the trial court did not abuse its discretion in sentencing Campbell.

{¶74} The trial court imposed a sentence of ninety days in jail, with thirty days suspended and credit for two days served. *Sentencing T., June 13, 2025, at 2.* That sentence is within the statutory maximum for a misdemeanor of the second degree. R.C. 2929.24(A)(2). Accordingly, the sentence is presumed valid.

{¶75} The record further reflects that Campbell was represented by retained counsel at sentencing and did not request a presentence investigation report, seek to present mitigating evidence, or object to the sentence imposed. Nothing in the record suggests that the trial court failed to consider the relevant sentencing factors or otherwise acted outside the bounds of its discretion.

{¶76} Campbell nevertheless asserts error based on the trial court's failure to personally address him and inquire whether he wished to make a statement before sentencing. R.C. 2929.19 and Crim.R. 32(A)(1) impose a mandatory duty on the trial court to afford counsel an opportunity to speak and to personally address the defendant at

sentencing. *State v. Jackson*, 150 Ohio St.3d 362 (2016); *State v. Campbell*, 90 Ohio St.3d 320, 326 (2000). Ordinarily, a failure to comply with this requirement necessitates resentencing unless the error is invited or harmless. *State v. Morgan*, 2022-Ohio-4576, ¶ 30 (5th Dist.). Here, however, the error was harmless beyond a reasonable doubt.

{¶77} The jury returned a guilty verdict on the Obstructing Official Business charge and acquitted Campbell of Resisting Arrest. The trial court did not reference any prior criminal history, victim impact statements, or sentencing recommendations by the State. Rather, the sentence was grounded exclusively in the evidence presented at trial.

{¶78} Equally significant, the sentencing judge was the same judge who presided over the jury trial and personally observed the testimony and reviewed the dash-camera and body-camera footage admitted into evidence. The court was therefore intimately familiar with the facts, the circumstances of the offense, and Campbell's conduct throughout the encounter. Under these circumstances, there is no reasonable probability that an additional statement by Campbell would have altered the sentence imposed.

{¶79} Although the trial court did not expressly cite R.C. 2929.21 or R.C. 2929.22 at sentencing, it was not required to do so, and the record affirmatively demonstrates that the court considered the nature of the offense and the evidence presented at trial in fashioning an appropriate sentence.

**Conclusion**

{¶80} Because the sentence imposed was within the statutory range, supported by the record, and the product of the trial court's reasoned discretion, no abuse of discretion occurred. Any error arising from the trial court's failure to personally address Campbell at sentencing was harmless beyond a reasonable doubt.

**{¶81}** Campbell's fifth assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Massillon Municipal Court, Stark County, Ohio is affirmed. Costs to Appellant, Randon Raymone Campbell.

By: Popham, J.

Baldwin, P.J. and

Gormley, J., concur